IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| PHOENIX ENTERTAINMENT PARTNERS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> MULLIN CORPORATION and DANIEL O'NEILL d/b/a BIG SOUTH ENTERTAINMENT, <br><br> Defendants. | Case No.: 4:15-cv-3096-MGL <br><br> **ORDER, JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS MULLIN CORPORATION AND DANIEL O'NEILL D/B/A BIG SOUTH ENTERTAINMENT** |

This matter is before the Court upon the Motion of Plaintiff, Phoenix Entertainment Partners, LLC (hereinafter "PEP"), pursuant to Fed. R. Civ. P. 55(b)(2), for a judgment by default against Defendants Mullin Corporation (hereinafter "Mullin") and Daniel O'Neill d/b/a Big South Entertainment (hereinafter "O'Neill" and collectively with Mullin, the "Defendants"). Based upon a review of the evidence before the Court, the Court makes the following:

**FINDINGS OF FACT**

1.  On August 6, 2015, PEP commenced this lawsuit against Defendants alleging trademark infringement involving counterfeiting, unfair competition and a violation of South Carolina's Unfair Trade Practices Act.

2.  On August 18, 2015, Defendants were duly served with the Complaint and Summonses issued by the Clerk.

3.  Defendants failed to answer or otherwise respond to the Complaint within the time required by Fed. R. Civ. P. 12.

4. At all times relevant to this action, PEP was the owner of U.S. Trademark Registration Nos. 1,923,448 and 4,099,045, both for the word mark SOUND CHOICE®, and of U.S. Trademark Registration Nos. 2,000,725 and 4,099,052, both for the design mark SOUND CHOICE & Design® (the "Marks").

5. PEP consistently used the ® symbol to denote the registration of the Marks and thereby to give notice to the public that the Marks are federally registered.

6. O'Neill has copied, shared, distributed, and/or sold copies of the accompaniment tracks or karaoke songs marked with the Marks via hard drives, USB drives, CD-Rs, or the Internet.

7. Mullin hired O'Neill to provide commercial karaoke services at its bar on at least more than one (1) occasion and had the right and ability to control whether its contractors use authentic or counterfeit materials to provide services.

8. Mullin had actual knowledge of the infringing and counterfeit nature of O'Neill's karaoke materials.

9. Despite that knowledge, Mullin refused to terminate O'Neill's services and continued to receive a financial benefit from the provision of infringing karaoke services at its establishment by O'Neill, through the attraction of paying patrons to its establishment.

10. Defendants used a reproduction, counterfeit, or copy of the Marks in connection with providing karaoke services, by displaying that reproduction, counterfeit, or copy during the provision of their services.

11. Defendants did not have a license to create digitized copies of PEP's karaoke discs or of the karaoke music tracks contained thereon.

12. An unauthorized digitized copy of PEP's karaoke discs or karaoke music tracks is a counterfeit.

13. Defendants did not have a license to use counterfeit tracks in connection with their provision of karaoke services.

14. Defendants' unauthorized use of counterfeits of the Marks is likely to cause consumer confusion by deceiving Defendants' customers and patrons into believing that Defendants' services are being provided with PEP's authorization.

15. Defendants' actions were willful and knowing.

16. Mullin was notified by PEP of its infringing activities prior to this action, but nevertheless continued to infringe in the same manner as before.

17. Defendants benefit financially from the karaoke services performed, and particularly through the use of counterfeit goods bearing the Marks, through increased patronage and revenues and reduced costs.

18. PEP has been harmed by Defendants' infringing activities and will continue to be harmed if Defendants are not enjoined from further infringement.

19. PEP has elected to receive an award of statutory damages from Defendants.

Based upon the foregoing facts, the Court makes the following:

## **CONCLUSIONS OF LAW**

1. This Court has jurisdiction over the subject matter of this action as it arises under an act of Congress relating to trademarks, particularly including federally registered trademarks.

2. This Court has personal jurisdiction over the parties, and venue is proper in this judicial district.

3.  By virtue of Defendants' defaults, the allegations pled in the Complaint are deemed to have been admitted by Defendants.

4.  By using counterfeit materials bearing the Marks to put on karaoke shows and by displaying the Marks during the course of those shows at Mullin's establishment, Defendants have committed acts that are likely to cause confusion among consumers of their services as to authorization, sponsorship, and affiliation of its services by or with PEP. In particular, customers and/or patrons who visit Mullin's establishment or view O'Neill's karaoke shows are likely to be deceived into believing that the karaoke services are being provided with PEP's authorization.

5.  Mullin is vicariously liable for the infringing actions of O'Neill.

6.  Defendants derived a direct financial benefit from the use of the infringing materials.

7.  Consequently, Defendants' activities constitute trademark infringement involving counterfeiting.

8.  Defendants' infringement was willful and knowing.

9.  PEP is entitled to a damage award for infringement of its registered trademarks in an amount between $1,000.00 and $2,000,000.00 per mark, as the Court may determine.

10. The Court finds that an award of $50,000.00 is supported by the evidence of record and will be sufficient to compensate PEP for its losses and to deter others from engaging in similar conduct.

11. As the prevailing party in this matter involving willful and deliberate infringement by Defendants, PEP is also entitled to attorneys' fees and costs in the amount of $3,453.50. The Court finds that the sum of $3,453.50 is reasonable and appropriate.

12. PEP is entitled to a permanent injunction against Defendants' acts of infringement of its trademarks.

13. Defendants' karaoke equipment and materials are also subject to destruction pursuant to 15 U.S.C. § 1118.

## JUDGMENT AND PERMANENT INJUNCTION

Accordingly, it is ORDERED, ADJUDGED, and DECREED as follows:

1. Judgment by default is hereby entered in favor of PEP against Defendants Mullin Corporation and Daniel O'Neill d/b/a Big South Entertainment, jointly and severally.

2. Pursuant to 15 U.S.C. § 1117, Defendants are hereby ordered to pay the sum of $53,453.50 to PEP, with accrual of interest from the date of entry of this judgment until paid at the legal rate, pursuant to 28 U.S.C. § 1961.

3. Defendants and their agents, employees, and all persons in active concert or participation with them and having knowledge of this Order are hereby permanently ENJOINED:

(a) from using or displaying (including making, copying, sharing, distributing, selling, or otherwise using, and particularly including use to provide karaoke services), commercially or otherwise, any karaoke accompaniment track that is marked with either the mark in U.S. Trademark Registration Nos. 1,923,448 and 4,099,045, both for the word trademark SOUND CHOICE®, or the mark in U.S. Trademark Registration Nos. 2,000,725 and 4,099,052, both for the design trademark SOUND CHOICE & Design®, without the prior, express written permission of PEP or its successor-in-interest, if any, to the ownership of those marks or in any manner that is inconsistent with the following media-shifting policy established by PEP:

      (i) The karaoke host must purchase one authorized copy of each Sound Choice karaoke track on an authorized, original medium (CD) for each alternative medium (such as a hard drive) to which the host wishes to shift the content.

      (ii) If a track is shifted to another medium, the entire track must be shifted (i.e., no "chopping").

      (iii) The karaoke host must maintain ownership and possession of both the authorized original medium and the alternative medium during the entire time in which the content has been shifted to the alternative medium.

      (iv) The karaoke host must not use the authorized original medium to produce a karaoke show or for any other commercial purpose (including shifting the content to another alternative medium) during the time in which the content has been shifted to the alternative medium.

      (v) If the karaoke host discontinues possession of either the authorized original medium or the alternative medium, the associated tracks must be removed from the alternative medium.

      (vi) The karaoke host notifies PEP that the karaoke host intends to conduct or has conducted a media-shift or format-shift, and submits to a verification of adherence to PEP's policy; and

  (b) from making, copying, sharing, distributing, selling, or otherwise using digitized copies of karaoke accompaniment tracks, commercially or otherwise, which tracks are marked with any mark or other designation belong to any person from whom the Defendants have not obtained written authorization from the owner thereof to make, copy, share, distribute, sell, or otherwise use the digitized copy.

4.    Defendant shall deliver to the Court all of its karaoke equipment and materials, including, without limitation, any of Defendants' hard drives and other media containing unauthorized counterfeits of the Marks, for destruction within 30 days of the date of entry of this Order. Should Defendants fail to comply with said directive, the U.S. Marshals are authorized to seize and destroy Defendants' karaoke equipment and materials subject to this Order.

5.    This Court retains jurisdiction over this matter for purposes of enforcement of this Order.

**IT IS SO ORDERED.**


July 19, 2016                                          s/Mary Geiger Lewis
Columbia, South Carolina                   MARY GEIGER LEWIS
                                                                UNITED STATE DISTRICT JUDGE